Honors, may it please the Court, my name is George Roselle and I represent Chad and Tanya Richardson in this matter versus the Omaha School District. This case is about two primary issues. Number one, the applicable statute of limitations for an attorney's fees claim brought by prevailing party parents from an IDEA due process hearing at the state level. And secondly, the standard by which the Court reviews summary judgment and a grant of summary judgment with regard to the requisite level of showing and the burden of production and persuasion on the part of the moving party. I'd like to start first with the substantive issue, which is the summary judgment matter as to this case. This case was brought by Mr. and Mrs. Richardson related to the education of their child, L. L is an individual with numerous disabilities, the most notable of which is autism. L, at the time when he was in sixth grade, suffered a traumatic event. Beyond that, he had had significant setbacks with regard to his education over the course of his career at Omaha. In 2016, October, L was removed from school as a result of an incident that occurred on October 6th of 2016, and it wasn't until May of 2017 that L received services from the school again in the form of actual instruction. Beyond that issue and the lack of services during that period of time, L suffered a lack of testing, a lack of progress reports, and inapplicable and inadequate IEPs. He suffered from disparate and differing treatment at the hands of the educators and the administration of Omaha. And all of that has been testified to by Mr. and Mrs. Richardson and has been presented to the court in the form of an opinion from Dr. Knopf related to the standards of the educators in this incident case. The defendant moved for summary judgment. The court granted the summary judgment motion indicating that the defendant had made a proper showing as it relates to its burden of production under Rule 56. The defendant's statement of facts that supported this idea of a showing cited no materials in the record. They referenced only the complaint and a document attached to the complaint which was for the purpose of establishing the plaintiff's right to attorney's fees at the case below. The defendants will make much of this matter as being similar to an IDEA appeal. It is not an IDEA appeal. The only IDEA issue before the court is the issue of the applicable attorney's fees to the prevailing party at the due process hearing. The claims in this matter were solely based upon the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. The defendants motion for summary judgment in facts number 20 through 22 which cite to no point in the record simply make an argument or an accusation that the plaintiffs have produced no discovery that leads to a conclusion or that leads to any finding of gross misjudgment or bad faith as is required under those two statutes. Can I ask sort of a preliminary question? Yes, your honor. I think what you're arguing is sort of a failure to re-evaluate and then the failure to have an IEP? No, sir. Those certainly form part of the basis for the complaint related to the 504 and the ADA claims. That actually goes to my question. Sure. Did the district court just assume that you pled that? And if so, that suggests that you didn't plead it. And can you direct me where in counts two and three you did plead those two issues? So as it relates to the pleading of those issues in the complaint, counts two and three speak to several different aspects with which Mr. L was treated by the school. He was treated hostily. He was treated disparately. He was treated discriminatorily. And so all of those aspects together we argue were discriminatory as it relates to his disability within the context of his education. They may be discriminatory, but they're not failure to re-evaluate or failure to have an IEP. As it relates to the educational services, we certainly believe that the complaint is broad enough as it's written, as it was written initially, to encompass all aspects of discrimination. It certainly does focus a lot on the idea of bullying or disparate treatment. However, I don't believe that in this instant case under 504 or ADA that bullying can't be part of a greater claim for discriminatory treatment in general. I'm not arguing that. I just want to know where the failure to re-evaluate or to have an IEP is pled. So those issues are, my understanding and my belief is that they are raised as it relates to the facts of the case relative to the findings of the underlying due process hearing officer from the IDEA claim that would support the idea that there was also potential claims for 504 violations and ADA violations. If that makes sense, in the case of, let's think of the Frye case, the recent Frye case, the court held in Frye that the facts giving rise to a claim under the IDEA can also form the basis for facts under ADA or 504 and oftentimes they overlap and oftentimes they can be identical. And so the idea that there's a violation under the IDEA, while certainly not necessarily dispositive of gross misjudgment or bad faith, can certainly give rise to a question of fact, like in this instance we believe it has, as it relates to the requisite standard in order to get past summary judgment and to present those issues to a jury. And so from that perspective, as it relates to our response to their motion for summary report, which was pointed directly to in the response relative to the location of the opinions about the standards of care and the activities that they believed were in violation, that the expert believed were in violation of those proper standards. Additionally, the response to motion for summary judgment cited back to the depositions in general of the plaintiffs as well as an affidavit of the plaintiffs which disclosed several different aspects of the educational process which they believed to be discriminatory. And so our primary point on summary judgment is that the district failed to make a showing. That these three facts, which are unsupported, which don't reference back to any document in the record, are not sufficient under the CELOTEC standard. That under that standard, the court held that there had to be some sort of showing. You can't just make the conclusory allegation that no evidence exists and then put the burden upon the non-moving party to then come forth with whatever they think exists to support that proposition. I'm reminded of our trial courts and our jury instructions, for instance. I think it's 1.04 where the judge comes in before the jury every time and says, you're reminded to know that arguments of counsel are not evidence. And similarly here, if you look at those facts in the Statement of Undisputed Facts, those paragraphs which reference this idea of no evidence, only talk about bullying, number one. And number two, are unsupported by any documents in the record and are solely statements of counsel. So from that perspective, we don't believe that the standard was met relative to the requisite showing under Rule 56. And therefore, there should not have even been required a response. Now, out of an abundance of caution, we responded. And we certainly believe that sufficient evidence was presented to show gross misjudgment and bad faith to warrant a question of fact being presented to the jury. As it relates to the other matter on the table, Your Honors, it's nuanced. It's never been before this court. It has been before other courts which have reached varying results. We have the Fifth Circuit, which has not yet decided, taken a similar position to this court in Brittany O., which is that at this point, we don't necessarily need to decide the issue. The Ninth Circuit in the Zipperer case has decided that the attorney's fees claims which are provided under the IDEA or the IDEIA now, that those attorney's fees claims are subject to review under the state statute of limitations for tort actions or potentially for contract actions, I believe. And then we have the Sixth and Seventh Circuits, which liken them more towards administrative appeals and they use the state administrative appellate process and statutes. So what are we supposed to be doing here? Some of our cases suggest we're supposed to find the most analogous statute of limitations. Is that not correct? It is correct, Judge Arnold. The idea that we look at the most analogous state statute we borrow, in the instance it is not inconsistent with federal law, which I think is interesting here. You know, the Supreme Court in Jones v. R. R. Donnelly indicated that the idea is to across the country. And where these issues are settled, sure, we have this longstanding history of borrowing. But where they are not settled, like here, where there has been no established statute of limitations to be applied uniformly across the country or even as it relates to which specific state statute of limitations you would choose, that idea is not settled. And so that's the purpose of 1658, of 28 U.S.C. 1658. Did you raise that issue below? The issue, I believe, is the applicable statute of limitations. I don't necessarily believe that the new argument of which statute of limitations should be chosen is something this Court shouldn't consider. That was not raised below, Your Honor, this idea of 28 U.S.C. 1658. Also, would you think this free claim could be, I think the statute talks about, 1658 talks about civil claims, doesn't it? Civil actions? Yes, Your Honor, it does. Is this a civil action within the meaning of the statute? Yes, Your Honor. The IDEA specifically prescribes a civil action under 1415. No, the fee. The fee. The fee claim, yes. The fee claim? Yes, Your Honor. So I think that that's a separate civil action. Why did you say that? Under, I believe it's 1415 I3B that it relates to, that it prescribes a civil action for attorney's fees which may be brought into federal court subsequent to the finding by the due process hearing officer. And so what's interesting about 1415 I3B is that until 2004, there was only one party able to bring an attorney's fee claim, and that party was a prevailing parent. In 2004, Congress amended the Act. They allowed for an also possible claim under two circumstances for a prevailing district. How that affects this case is interesting in that 28 U.S.C. 1658 clearly applies to that claim because it arises out of an act of Congress. It's subsequent to 1990. It then has, because there is no statute of limitations prescribed within it, an automatic fallback four-year statute of limitations. And so what you end up with is a possibility that if this court were to hold that the applicable statute of limitations for a parent be as the defendant would, or the appellee would have you believe 90 days versus our request of a borrowing of a three-year statute, you would have a situation where you have inconsistent and inequitable statutes of limitations whereby a school district could sit on its laurels for four years and wait until a parent is out of that school district and then go after them for what they believe was a frivolous claim, and then potentially a parent would be then required to bring the same claim within a much shorter period of time. And if the court has no further questions, I'd like to reserve the remainder of my time  I just have one question. Certainly, Your Honor. Does everyone agree that the clock begins to run when the court action is complete or time-barred? Is there any question here about when the timer starts? I don't believe so, and I believe the court established that principle in the Brittany O. v. Bentonville case. That's what kind of established this idea that no matter what statute we're going to look for, we wait until this appellate time is over, and then once that's cleared, you then bring your action. I don't think it would prohibit someone from bringing one earlier. If they did, though, they would be at risk of having competing claims of an appeal. No real risk of not knowing or of having to pursue simultaneously the merits and the fee question. Yes, Your Honor. Okay. Thank you. Thank you. You were talking about the inconsistency that would be created by these differing statutes of limitation. Yes, Your Honor. What would the school district have to show to recover? They would have to show that the parent's claim was to a certain degree frivolous. So they do have a different standard as it relates to this idea of, you know, when they would be entitled to fees, but their entitlement to fees, and there are some other aspects of what they can show under Section 2 and little 2 and little 3. Frivolous, unreasonable, without foundation. Yes, Your Honor. For improper purpose. Now, what does the prevailing parent have to show? They have to show that they prevailed. Which is not much of a burden, is it? So long as you can prevail, Your Honor, yes. Yeah, when you prevail, I mean, that would be a given for the entitlement, but couldn't that explain why it really would not be an inequitable matter for the periods to be different? I don't think so, and the reason I would say that is because you have these mutuality of The elements I don't think would necessarily have to be equal. What they're seeking is the same thing. You're seeking the same relief, which is this payment of attorney's fees. And so, if in this instance you have a four-year window for a school district under the Judicial Improvements Act and a 90-day or a one-year or two-year window for a parent, you end up frustrating the purpose of the idea, which is to, you know, which is to support and foster the safeguards for the parents and the students. Thank you, Your Honors. Good morning, Your Honors. My name is Marshall Nye. I'm here on behalf of Omaha School District with Katie Campbell, who is at counsel table with me and who also was on the brief. I'd like to start first addressing Judge Shepard's comments, questions, and also Judge Arnold's and try to focus the court first, if acceptable, on the attorney's fees issues. On the issue about whether it would be equitable or not to apply a four-year to a claim by a district versus a shorter statute for a parent, I would first point out to the court that no court has applied that four-year statute to a school district as of this point, so we don't even have that question before us. And I won't get too far into the trenches on this, but we don't think there's any applicability of the four-year statute here because the right of the parent to recover attorney's fees predates the enactment of the four-year catch-all statute, and so since it's not a cause of action that accrued after 1990, then it, as a matter of law, would not apply. If it did apply, we do believe it might be equitable because it's very different from filing a claim essentially for sanctions, which is what a district would be doing because it would truly have to be a frivolous claim and have to make a showing on that basis. Judge Arnold, as to the question you asked about whether the statute authorizes a civil action for the recovery of attorney's fees, I would submit to the court that the statute is far from being that clear or precise on that point. What the statute says in terms of a civil action is that any party aggrieved, so not a prevailing party, any party aggrieved by the findings and decisions made under subsection F or K who does not have the right to an appeal under subsection G, and any party aggrieved by the findings, so on and so forth, may bring a civil action. So that's the context in which civil action is used is the aggrieved party. When you get to the point that deals with attorney's fees, the statute says that in any action or proceeding brought under this section, the court in its discretion may award reasonable attorney's fees as part of costs. So the language is somewhat different. It talks about it could be a proceeding or action. I'm sorry, what? So it talks in terms of a proceeding or an action relative to attorney's fees. I would like to continue on the issue of the attorney's fees as it is an important issue to be resolved in this circuit. As you know, Judge Arnold, we came close to it in the Brittany O case. There, the court had the opportunity to consider the application of the Arkansas statute as the most analogous statute. The court ultimately determined that it need not reach that finding at that point because the court reversed on the when the clock starts, as you just said, Judge Arnold. And because the court reversed on when the clock starts, there was no need to make that subsequent decision on when does it end. But we do now have three district court judges in Arkansas who have made the same ruling. And they have all ruled that the 90-day clock is the correct one. That the Arkansas statute that relates to the Children with Disabilities Act is the proper statute to apply and that that 90-day period is the most analogous. So we have Judge Baker. You just said the word I was about to employ myself. Why exactly is it analogous? Well, first of all, because it is it is Arkansas's enabling act to to abide by and enforce the Individuals with Disabilities Education Act. So it is the standard that Arkansas has created. But it's not a fee. It's not it has to do that hasn't anything to do with fees, right? That's correct, Your Honor. So I'm just wondering, it's always a difficult business to know what statute to borrow. But then the other question is, apparently, in our cases, we consider things other than analogy. We consider, in some instances, sort of the equitable considerations. And so how do those two things work together? And then there's a third thing that sometimes comes up. And that is, well, is it consistent with a statute, the purposes of the statute? There seem to be three different ideas in these cases that sort of sort of take have some influence on the result. But it's not clear to me exactly in what order you're supposed to consider these things and which things weigh the most. So, Judge Arnold, I would suggest that all of those things cut in favor of applying the statute. As you know, we've had four circuits address the issue, and we're two and two. So this Court, if it chooses to address the issue today, this Court's going to break the tie, at least for the time being. And we're going to have a majority approach in the country. And as the Court knows, we have the Ninth and the Eleventh Circuit who have decided to go with an independent cause of action type statute of limitations. And then we have the Seventh and the Sixth Circuit who have decided to go with a statute much akin to the Arkansas Children with Disabilities Act. And I would point out in particular the Powers case because, and I know it won't surprise the Court, it was the most persuasive to me. And in that case, of course, the statute was not 90 days. The statute for bringing an appeal, substantive appeal of the due process hearing was only 30 days. 30 days, not 90. And you could tell reading the Court's analysis of that case that the Court was concerned with applying only 30 days. I mean, I really read that decision to be a Court that was really pained by the ruling it was about to make with this 30-day rule, especially under the circumstances of that case. But, you know, frequently there's a 14-day statute on a fee. Well, of course, yeah, under the federal rules, under Rule 54. Yeah, that's common. It's very common, and the Powers Court even mentioned it. And I think the 14-day rule helped the Powers Court resolve the 30-day. And I don't want to spend too much time on the Powers Court, but Powers had some unique circumstances in that there was not even a due process hearing, it was a mediation. And there had been a whole lot of engagement between the Department of Education there and the parents. There had been no notice to the parents. Obviously, the law wasn't resolved at that point. But despite all of those circumstances, the Powers Court decided that the 30 days was the most analogous and appropriate, and the Sixth Circuit has since followed that. Is our Richardson case of any applicability or help in this instance? In the Richardson case? In the Richardson case where my brother decided some years ago, at least he was on the panel. I'd love to tell you that I knew the answer to that question, but I don't, Judge Arnold. All right. I appreciate that. I'll see if I can figure it out. All right. All right. But I would tell you that the Arkansas legislature has spoken, and what they have determined is after giving the opportunity by the federal government to decide whether 90 days was the or not, they decided 90 days was appropriate. And certainly, the fee issue as an ancillary issue is not nearly as complex as the notion of making a substantive appeal. I'm sorry. I meant Birmingham. Oh, the Birmingham case. Yes. Your Honor, I don't think that the Birmingham case is applicable because it is to the extent that in Birmingham the decision was made that you should look to the most analogous state statute, but it's not to the extent that in Birmingham Congress had not yet spoken on the 90-day appeal time. And so in that case, Congress had not signaled 90 days is the appropriate appeal. So in that instance, the court decided that we should look to a more kind of independent right of action type statute of limitations, and my memory is it was the three-year statute of limitations for torts. But that case did not deal with fees. That dealt with the substance of the appeal itself, and here the substance of the appeal itself would no longer be three years. It would now be 90 days. If you go to the Seventh Circuit, it would be 30 days, at least in the state that that one emanated from. So with all due respect to your brother, I don't think that it does have much application here except to the extent that the court looks at the most analogous statute. I would tell the court that I think that this court, as much as I won a ruling on this point, and I think it's important now that my life is so consumed with representing school districts, I think it's important for us to know the answer. But I think that if this court so chose, the court doesn't, again, have to reach the issue. And the reason why the court doesn't necessarily have to reach the issue is because of judicial estoppel. And as we argued before Judge Brooks, who did not rule on that issue, is it's the position of the district that the Richardsons are judicially estopped from claiming that they are the prevailing party. And the reason why they are judicially estopped from claiming that they are the prevailing party is because they first filed this action as an aggrieved party. But couldn't they be both? Well, if you look at the language in Brittany O., you know, the court stated that at the end of the 90 days, you know who is what. And so there would be a suggestion that you're one or the other. Now, I do think there's a scenario where you could be one and it could change. I could file as an aggrieved party, request that the court deem me upon reversal the prevailing party, and then have an opportunity to proceed as a prevailing party. But here, what happened, of course, is that the Richardson filed as the aggrieved party on the 90th day and then failed to serve within the next 90 days, then asked for an extension to serve, which Judge Brooks denied, and then came back with a 180 and said, we're the prevailing party, give us fees. It was a clear end around what Judge Brooks had ruled, which is your statute is gone. I mean, he called it out in his order that he was not unmindful of the fact that the statute had or very possibly could have run. And so, you know, we take off the baseball hat, we put on the cowboy hat, and here we are. You know, now we're the prevailing party and we want fees. Of course, you know, we believe that statute was missed too for all of the reasons that we've argued, that it was still the 90 days after the 90 days. So we still argue that, but if the court were so inclined to wait and see what a few more circuits do or what the U.S. Supreme Court does on this issue, and I do think it's an issue that's going to have to be resolved there, and who knows, maybe I'll get my first opportunity. I'm 56. Maybe by the time I'm 65, I can go up there and argue one. But it is something that's going to have to be resolved at some point. But it doesn't have to be today if the court were inclined to agree with our position that judicial estoppel precludes the complaint in all respects. I have only a couple of minutes left. I do want to just say a couple of words on the motion for summary judgment, if I may. You know, the statement that no evidence was brought forward by the moving party, by the time the judgment was filed, we obviously vehemently disagree with that characterization. If the court were to look at the statement of undisputed facts that were filed by the district, they stated and then incorporated the administrative record that had been created at the administrative level. And there, of course, there was days of sworn testimony that had been offered, and very precisely detailed what the claims for bullying were. And, you know, turning back to the questions, Judge Grunder, I think from you about where in the complaint did we talk about the failure to educate and the failure to have an appropriate IEP, you know, all of those claims are now part of what I call Richardson 3. We've now gone through another due process, and we're back in front of Judge Brooks again. But the counts two and three that remained after the initial motion to dismiss were based on bullying, and the claims of bullying are set out in great detail in the record and in the decision, and there were four essential claims of bullying, and there was testimony supporting that. So we pointed to the administrative record and the lack of discovery and said they can't meet their burden because here is what the evidence shows in the record. And with that opportunity, they offered nothing, nothing. They said, look over here, let's talk about failure to educate. And then what Judge Brooks did appropriately was, number one, determine whether those failure to educate claims were in the complaint. He decided they were not. That gave him the benefit of the doubt and did the analysis anyway and determined that they had not met the standard. He just assumed they were in the complaint. We're not required to do that, are we? That is correct, Judge Grunder. And he applied the standard from your case, which was the – it's going to take me longer than the time I have to identify your case – in which you set out that it would require the gross misconduct in order to assert their claims. Anyway, my time has expired before I got that side out, but it is in our brief. Thank you very much, judges. Mr. Rozell, our questions aid into your rebuttal, so I'll give you another minute for two minutes total. Thank you very much, Your Honor. As it relates to Mr. Nye's presentation, there are a couple points I want to clarify for the court. The idea of judicial estoppel, I don't believe, appropriately applies to a case that is without – that the court never obtains jurisdiction over and which is a nullity, number one. And number two, under the New Hampshire standard, I don't believe that any aspect or any element that would give rise to judicial estoppel applies here, namely that there was never any jurisdiction over the case and there was never any reliance upon any maintenance of any position by the court or by the opposing party, and thus there was no prejudice as it relates to that. As far as the allegations in the complaint and the summary judgment and whether or not it was specifically stated as to the failure to educate, certainly the failure to educate claims were brought. They were litigated. They were examined. Looking at the record and we look at our – the documents supplied in the record, including the deposition transcripts of Mr. and Mrs. Richardson, those specific issues were addressed in deposition. The defendant asked specifically whether or not they had information about the failure to educate and what those claims constituted. The idea that there was no knowledge or no notice under the notice pleading statute of a discrimination claim for failure to educate or any aspect of Mr. – of the Richardson's education I think is unfounded. And so from that perspective, I would believe that our complaint under the notice standard would sufficiently give rise to a claim for discrimination in all aspects of his education, including the provision of that education as well as the idea of the disparate treatment and bullying potentially. From the perspective of whether or not they pointed to an administrative record, the administrative record of the underlying due process claim or the prior due process claim is not ancillary to an ADA or a 504 claim. It is not part of the record in this case. The order was submitted as an attachment and it was referenced for the purpose of supporting the idea that the Richardsons are the prevailing party and that the hearing officer had found these certain things. There was no review of the factual findings of the due process hearing officer at the court level. There can be no preclusive effect as it relates to the review of those facts. Even under the Maubry case, which has been cited by the appellees in this matter, the idea that there should be preclusive effect as to a due process hearing I think requires the court to analyze and to determine whether the due process hearing was correctly determined. And in this case, that was not done. The only facts were viewed in the light of the factors and the elements of an ADA claim and a 504 claim. And if there are no further questions, I thank your honors very much for your time and consideration of our request. Very well. Thank you, counsel, for your appearance and arguments today. The case is submitted and, as we've said, will be decided in due course.